The third case on our call of the docket today is agenda number 16. Case numbers 110-759 and 110-760. Forest Preserve District v. State of Illinois et al. Counsel for the appellant, first up, is it Mr. Day? Please proceed. You have to place the court, Counsel. The issue that we've brought before the court today is not really the first time it has been here. We've provided somewhat of a historical travel log through the development of eminent domain law, both in this state as well as the United States. But the earliest decision that I think addresses virtually the same issue is the Dunleavy decision from back in 1878. In that case, this court held that even if the value of a property doubled during the pendency of the eminent domain case, just compensation was still satisfied, and that delay between the date of valuation and the date that the property owner was actually paid does not offend the Constitution. The second case took place in 1918. I believe that was argued in this very room. That is the Farwell decision, City of Chicago v. Farwell. Facts very similar to the ones that you have before it with a completely different result. Mr. Day, let me interrupt you. I called you up by name, but I'm not sure if you officially announced your name and your party you're representing on the record. Maybe you did, but repeat it if not. My name is Scott Day. I represent the Appellant and Cross Appellee, the Forest Preserve District of DuPage County. Thank you. The Farwell decision from 1918 has facts that I think are remarkably similar to the ones that are before the court with a different result. In the Farwell decision, the defendant in that case insisted that the property should be valued at a later point in time because the case had taken three or four years to proceed. They put on evidence in that case through an offer of proof that the value had significantly increased during the course of that case. The Supreme Court seated in this room reached a decision that no, you would use the valuation date at the inception of the case, and that the fact that the case took some period of time to complete the trial did not offend the just compensation clause, and just compensation was satisfied. The third decision that I think is also directly on point is the Blue Island decision, also of the Illinois Supreme Court. That one addressed the same issue. The property owner was insisting that because the case had taken three or four years to proceed, that the value of the property had increased, that just compensation would be offended if the valuation was not done at a later date than the date of filing in that case. The Supreme Court in that case looked to the defendant's activities and said because you, the defendant in this case, participated in the delay, and you were partially at cause of the delay, and did not file a demand for speedy trial, we will not hear your constitutional claim that there's an infirmity in using the original valuation date. How does the Kirby case, your Supreme Court case, and the 2006 General Assembly amendment to the statute, affect these cases that you've cited, these three cases? The Kirby case is being interpreted, I think, two different ways. Certainly the appellate court opinion is that the Kirby case dictates that these decisions I've just recited are wrong, that the Illinois Supreme Court for over 100 years was demanding that just compensation be provided through a set of rules that violates the Constitution. That's the holding of the appellate court. I don't believe that that is the only interpretation of the Kirby decision, and I don't think that that's what the Supreme Court held in Kirby. I believe that the holding in Kirby is far narrower than the interpretation that was provided by the appellate court. And the General Assembly's amendment to the statute? The amendment to the statute is a legislative proclamation. As I think you indicated in your decisions related to stare decisis, the legislature has the ability to act proactively in the future. The amendment to the statute narrows the period of time that you can have a constitutional problem. But if you accept the proposition that property must be valued at the time that the property owner is paid, the new statute also offends the Constitution, as did the old statute. If you're accepting the proposition that property must be valued when the property owner is paid, even the new statute does not provide that. Both of these statutes provided a point of valuation far in advance of the date that the property owner is paid. And the difficulty that you have is in defining what is called a property value. And what is called the date of taking for these cases. Mr. Dave, before you move on, the speedy trial argument. I believe the appellate court called it a mirage, found it more fitting to criminal matters. Specifically, do you believe that a landowner should forego their right to just compensation by acquiescing to as much as or to as little as a continuance? And in keeping with that thought, I believe the appellate court talked about there's other remedies for delays, such as sanctions. And why wouldn't that be an appropriate way to look at it rather than a speedy trial situation? Let me take that a piece at a time. I don't think that in a proceeding such as eminent domain that I believe the court has always referred to as sui generis. I don't think that the right to a speedy trial once enunciated by this court is a myth. I don't think an appellate court can take a proclamation from this court that says you have a right to a speedy trial and a duty to file a speedy trial demand if you wish to address delay. I don't think that the court is in an appropriate position asserting that that right is a myth. I think the right does exist. Secondly, a simple continuance of a proceeding on one occasion, which I think is the example that you've provided, Your Honor, I don't believe that a single continuance should constitute a waiver of a constitutional right. But I don't think that that was what was at issue in Blue Island. And I don't think that's what was at issue in this case. In this case, you had nearly an eight-year gap where the right to proceed and the need to proceed on an expedited basis was ignored. You had a plaintiff in this proceeding that knew very well that this court had repeatedly asserted that it is only wrongful delay by the government, wrongful delay by the government, that constitutes grounds for a dismissal and grounds for a complaint by the property owner. And that a property owner who doesn't submit a demand for a speedy trial demand and participates themselves in delay has no constitutional violation that they can raise with the court. So you've got a plaintiff that is working and relying upon a system that this court has defined, the framework, if you will, that the State of Illinois has defined, acknowledging that you have established the date of filing as the date of taking. And you've got a defendant that has virtually ignored that framework as it relates to the speedy trial demand, as it relates to asserting their rights and their demand before the court, and waits until four weeks before the jury trial is to start to say when we're done with the jury trial, I'd kind of like you, Judge, to reevaluate the just compensation with today's value. That's the situation that you had. I think the Blue Island decision applies to that. And I think that the suggestion that a defendant should do something to the trial court, alert the trial court and the plaintiff that they are somehow or other suffering an injury over eight years or seven years, they've got some responsibility to report that to the court and at least bring it to the attention of the court prior to four weeks before the trial. The Illinois framework that has been defined, if you will, is part constitutional, part legislative, and very much the working of this court. Illinois provides for a jury trial. The federal system does not. Illinois provides that the time of taking equals the date of filing. You've got dozens of decisions dating all the way back to Farwell. Well, that is clearly enunciated. I know the appellate court took issue with our advocacy on that. I don't understand where they can find a case that says in Illinois the date of taking is the date of payment. And we've provided dozens where the date of taking in Illinois is defined as the time that the case is filed. Real property taxes. This court has held that it's unconstitutional to charge property taxes to a property owner as a lien against their property after the date of taking. And that has always been viewed as the date that the case is filed. That law doesn't exist in the federal system. Wrongful delay by the government under the system that this court has devised constitutes grounds for dismissal of the case. It forces the government to pay for attorney's fees and costs. It forces the government to refile the petition with a new valuation date if they seek to acquire the property. Wrongful delay by the defendant where no speedy trial is demanded. Counsel, your time has expired. Thank you very much. May it please the court, I'm Assistant Attorney General Richard Huzzack, Counsel for the Interventor, People of the State of Illinois, on the relation of the Attorney General. We were granted leave to intervene in the appellate court when a Rule 19 notice was sent out that in that court there had been a claim of the unconstitutionality of Section 7-121. Our argument accepts for present purposes that the, for constitutional purposes, the date of taking is that snapshot in time when there is an irrevocable commitment by the government to pay for the property, to take possession of it, they can't back out, and the landowner is entitled to that compensation and can no longer regain the property. So we're presenting our arguments based upon that premise, which is different from our co-appellants here. But nonetheless, we urge the same result for two reasons. One, the invited error doctrine applies. This isn't a normal forfeiture situation where somebody forgot to make an objection in the trial court and later argues reversible error on appeal. This is a situation where the appellants are now complaining of reversible error because the circuit court did something they specifically asked it to do. They told it it had to instruct the jury to value the property based upon Section 7-121, and then they turned around and said the reason that the judgment constitutes reversible error and is unconstitutional is that the jury followed what they asked the trial court to do and value the property based upon the date that the case was filed. So our position is that it's really not appropriate or proper for the appellate court to say, this is just a forfeiture that we can disregard. There's a fundamental qualitative distinction in the law between those types of situations, a simple forfeiture and invited error, and we urge the court on these compelling facts. There was no evidence that the property had increased in value during the course of the case. They didn't ask the court to have the jury instructed to value it at a different time. All of this is before the jury trial. They told the judge specifically that the only thing it could do was to instruct the jury to value the property in accordance with the statute that they now on appeal have contested the constitutionality of, and the judge did so. And then, of course, after the trial they turned around and said, oh, we have evidence that it increased in value, it violates our constitutional rights for you not to conduct some post-trial hearing at which you consider evidence that the jury never heard, and you just changed the jury's verdict because it isn't good enough. I think the cases that this court has issued and the decisions it's handed down on the invited error doctrine provide a basis for the court to avoid addressing the constitutional issue, and it's important to remember that courts should not strike down statutes unless there's no other possible, reasonable basis to decide the case, and here there is one. Turning to the merits, and I understand that this is an important issue, but this case may not be the vehicle to address it in light of the invited error principle, and that is that the appellate court declared this court's holding in the Blue Island case, the trustees of township, the schools of township 37 versus First National Bank of Blue Island, no longer good law. Well, it's good law and it's good policy. The policy is that somebody can't sort of sleep on a claim that they should be entitled to an increase in the value of property during the course of a proceeding and then wake up like Rip Van Winkle at the 12th hour and say, ah-ha, you know, we've let this case sort of, you know, go along on a normal course, but now we want to be paid a higher value because the property has gone up during the meantime. They have all the economic upside from that type of situation and no economic downside, and that creates perverse incentives and it fails to meet the constitutional balance that is just compensation, which is that compensation be just both to the landowner and to the public, and the position that they advocate that the appellate court has adopted puts a heavy thumb on the scale in favor of landowners that gives them every incentive to prolong a case as much as possible with no economic downside for doing so and all the expense borne by the public in the event that the property goes up in value. Just like in a criminal case, a speedy trial is something that if the defendant wants their right to a speedy trial protected and their right not to be held in custody unduly, they invoke their right to a speedy trial. It exists under the Constitution. You don't need a statutory implementation of it, although there is one. Likewise here, the incentive should be placed upon the landowner to make this election between either being able to claim that they're entitled to an increase in value of the property during the course of the proceeding, but then having the case proceed as quickly as possible to minimize any avoidable consequences of additional expense to the public who has to pay for it, or they can, as Blue Island says, they can waive that right. They can waive that right to an increase in value and let the case proceed as long as it may take. That's the fork in the road. What they can't do is have it both ways. They can't let the case proceed under some normal time trajectory or track, and then at the 11th hour say, aha, but oh, by the way, we want a higher value, and then speculate, as they're doing in this case, that maybe the case would have taken eight years anyway, even if we'd asked for a speedy trial. They shouldn't be allowed to make that argument. It's not actually factually plausible either. Did the defendants argue prior to trial, or rather, did they put the parties on notice that there was a potential problem with the data evaluation? Did that occur? Seven and three quarters years after the case began, I believe they did. So there was no request for a speedy trial at the outset. And I think in answer to your question, Justice Thomas, to Mr. Day's argument, other measures to try and protect the public interest in this type of situation would not be sufficient. How do you answer what I suspect will be the argument of opposing counsel that they couldn't request a data evaluation under Kirby until the jury verdict was rendered, and defendants could thereafter submit evidence of the rise in value after 1999? Well, they're declaring the new statute facially unconstitutional, if you accept that argument. But may I finish the answering the question? Okay, all right. I wasn't sure if that was rebuttal time. The answer is that they're essentially treating the perfect as the enemy of the good. And even Kirby doesn't say that. It doesn't say that you have to have a perfect data evaluation. They say you have to have a constitutionally practical data evaluation. And so unless there's a material difference between the data evaluation and the date of the taking, there's no constitutional problem. And I think the Constitution sort of recognizes this, that you can't, you know, it doesn't force serial trials because every time there's a payment, then there might have been that 24 or 48-hour period been at some minuscule change in value. There has to be a material difference. And I don't think that there's any basis to claim that in the eight-day period between when the jury tendered its verdict and the payment was made, there was any change in value. They don't accept their argument that the constitutional claim wasn't technically ripe until the jury rendered its verdict. No, and even – In an amount that would have been significantly less than the value of the property on the day of the taking. I think we're going to hear that. Well, they've made that, and we've responded to it in our brief, and we do reject it. And our position is that the other jurisdictions in cases that say that you can, like the new Illinois statute that's not applicable to this case, that says that the court has discretion, either under constitutional compulsion or under statutory authority, to reset the valuation date. They never set it for a date after the trial, but it's constitutionally permissible to have it be the commencement of the trial, even though the payment may not be for several weeks thereafter. And in this case, the law in Illinois provides that the judge has authority to set a prompt payment date, which essentially closes the window on when that can occur. We're not talking about, you know, gold futures contracts or something, or the stock market that are going up and down, you know, wildly, you know, overnight on a regular basis. We're talking about land values, that unless it's Sutter's Creek in 1848, there isn't some massive overnight change in value over time. So that de minimis, you know, increment of time is not of constitutional significance. And our position then is that Blue Island, coming back to that proposition, represents a constitutionally permissible way for the state to put the landowner at the election to basically have it one way or the other, but not both. They can say, we're reserving our right, we're putting the public on notice, that if the value of this property goes up during this case, we want that increase in value. And as a constitutional matter, under the state's argument here, the court would have to accommodate it. But they can only get that if they say, Your Honor, we want a speedy trial. We want this case to be expedited. And I don't believe there's any weight to the argument that the three-part test of the Williamson County case, which is that state condemnation procedures be reasonable, which we think Blue Island is, and adequate, which we think it provides. And certain, the certainty test is not failed simply because we don't have some one-size-fits-all timetable for every case that has to be followed in a condemnation proceeding. Thank you, Your Honors. Thank you. Counsel for the appellee. Thank you. Thank you, Your Honor. May it please the Court. My name is Jim Wagner, Counsel for the Defendants, the Property Owners, in this eminent domain proceeding. I urge the Court today to uphold the appellate court's judgment as it relates to the Kirby Forest Industries case, as to that issue, but to reverse the appellate court's judgment regarding the date of valuation on remand, and also to reverse the appellate court's judgment as to the Traverse claim. Defendants urge this Court on remand that this case should be retried with the date of valuation of December 20, 2007, to reflect the actual date of taking in this case, which is the date that the government deposited the just compensation proceeds awarded by the jury. The primary issue before the Court today is whether the application of the eminent domain valuation statute in place in 2007, which required that condemned property be valued based upon the date of filing of the complaint, provides just compensation under the Fifth Amendment to the United States Constitution. The U.S. Supreme Court has determined in Kirby that a valuation date that does not reflect the value of the property on the date it is taken, it deprives just compensation to property owners. If there's a material increase in the value of the property between the date of filing and the date of payment, during a substantial delay between those periods, then there's been a deprivation of just compensation, and that's what occurred in this case. The first issue that I'd like to address from the Forest Preserve's argument is what the date of taking is in Illinois. The law is clear under the Fifth Amendment that just compensation requires payment of the value of the condemned property on the date it's taken, and the United States Supreme Court has reached the conclusion that a taking occurs upon payment, and this is supported by lots and lots of evidence, including Illinois common law, which teaches that the taking of private property only occurs upon payment. The cases that the Forest Preserve has relied on in this case relate to liens that are recorded subsequent to a date of filing, and simply attempts to decide the rights of subsequent lien holders. The true cases that this Court should be looking at are those like Forest Preserve v. West Suburban Bank, in which the Court held that the date of taking is the date of payment. There's no rights are taken upon filing. The government cannot go in and possess the property upon filing. The owner does not have a right to compensation upon filing. Those rights do not transfer until payment is made, and it's clear under Illinois law and U.S. Supreme Court law that the taking occurs upon payment. The fact that counsel argues for a date of filing as date of taking is belied by the fact that interest is not due on just compensation proceeds dating back to the date of filing. If their argument were true, then when a jury sets a verdict based upon a 1999 date of value, then the owner would be entitled to interest up through the date of payment. That does not occur in Illinois, and that's because the date of taking is the date of payment. Now, the next question is whether the Illinois evaluation framework deprives owners of just compensation when there's been a significant delay between the date of filing and the date of filing. And we believe that it does. The mere fact that the values significantly increased between or over the eight-year period that this litigation was pending, and the owners have been deprived of the value on the date of taking and forced to accept the jury's verdict based upon the date of filing in 1999 is a violation of the Constitution. And here the property owners sought relief in the trial court months before the trial began, making the court aware of the constitutional question and the constitutional violation that would occur in this case if the owners were forced to accept a 1999 evaluation when their property was not taken until 2007. The Forest Preserve claims that Kirby does not apply to this case. And that just simply is not true. The United States Supreme Court interpretation of the Fifth Amendment just compensation rights are binding on this court. And the appellate court correctly held that the Fifth Amendment applies to Illinois concerning issues of just compensation through the 14th Amendment and requires not only due process, but also that the result of the process yield just compensation that substantively complies with the Fifth Amendment of the Constitution. Doesn't the, or hasn't the United States Supreme Court specifically allowed states to define when the taking occurs? Yes, they have. There are instances where they have, though that does not mean that the United States Supreme Court will allow instances to occur where just compensation is not provided by those alternative systems. I don't think the United States Supreme Court requires that the exact Kirby procedure be provided in all states. They merely require that just compensation be paid based upon the value of the property when it's taken. And to the extent a system set up by a state complies with that requirement, then it is, you know, it survives constitutional challenge. The Illinois Eminent Domain Act does not provide any alternative mechanism for assessing just compensation other than what Section 7-121 provides, which is that properties are to be valued based upon just compensation. And as a result, the valuation framework specified in the Eminent Domain Act is unconstitutional as applied in this case. Even if this Court determines that the owner has been deprived of just compensation in the case based upon Kirby, the plaintiff and the state have suggested that the defendants forfeited their constitutional rights in this case. And this is simply not true. The only case that the Illinois Eminent Domain Act does serve is that under Blue Island, in which they assert the defendant was required to request a speedy trial prior to asserting their constitutional rights. In that case, the owner stood by and did nothing to bring the case to trial for over four years, and Blue Island is distinguishable on its facts and its law. Initially, Blue Island was decided before the codification of the Eminent Domain Act, which was in 1972, and the fact that the speedy trial demand from Blue Island was not incorporated into the act is evidence that it was rejected by the General Assembly. However, the record is also clear that the owners here did not simply stand by and allow time to pass without moving the case toward resolution, as they did in Blue Island. Mr. Wagner, what import, if any, is the fact that the legislature has amended the statute so that it can consider the valuation date, I believe, as the date of trial for cases that are more than two years old? Unfortunately, that legislation does not apply to this case. However, I think that that is strong evidence that the General Assembly has recognized the unconstitutional nature of the existing statute and allowed for a system that can continue to be used in the case. However, I think that that is strong evidence that the legislature has recognized the unconstitutional nature of the existing statute and allowed for a system that can continue to be used in the case. So that amendment talks about the date of trial, right? It does. It allows the trial court to advance the date of value from any date after the date of filing up to the date of trial. The legislature takes a long time to decide whether to abandon a case after a trial. Even if the date of value is set on the trial date, you know, if the government takes a year to decide whether to abandon, where you may have an increase in value under that scenario, but I think that is such an unlikely scenario that the legislature has really cured the defect that we're claiming here. In this case, counsel, when is the first time that the district should have considered the statute? Was or should it become aware that the property owners did not believe that the value at the time of filing was an accurate assessment of the value of the property? The owners filed their motion based upon Kirby approximately four months prior to the trial. We challenged the constitutional nature of the, or we referenced the fact that the existing statute would not result in a constitutional outcome unless there was a value assessment of the value of the property. Unless an alternative process was allowed to occur. And the process that we suggested was similar to that that was provided in Kirby, where there would be a trial based upon the 99 valuation, but then a post-trial proceeding to determine whether there had been an increase in value and then allow for some modification. Now, we did not specify how that modification could occur. And the trial court had every opportunity to allow there to be a subsequent jury trial. Now, we realize that that is not the most efficient means of solving this problem. But the reason for that, as specified by Justice Thomas earlier, is that there was a concern over the ripeness of this issue. That under Williamson County, we would be forced to go through with the existing system and be denied the opportunity to have a trial. We would have to allocate our constitutional rights to just compensation before the claim would be ripe to challenge the constitutionality of the statute. And additionally, the procedural difficulty of not having any knowledge of when the just compensation proceeds as set in the initial trial would be deposited by the government. We didn't know if it would be deposited, and we didn't know if it would be months and months or even a year before it was deposited. So there really wasn't an opportunity to go into the court and say, here's the data value that you need to use in this case, because we know that's when the taking is going to occur. Getting back to the Blue Island issue, I would also like to note for the court that in Department of Public Works v. Vought, this state has recognized an exception to the speedy trial demand that was specified in Blue Island. And that was under circumstances where the owner would be prejudiced and put to a strategic disadvantage in proving economic loss. And I think that's true here. As in Vought, the owner here, if they were to demand a speedy trial early in the case, you know, first would not know what that really means. Whether that means we need to try the case in six months, one year, two years, regardless, what that would have meant is that the owner would have had to forfeit their right to challenge or contest the other ownership claims that were being made early in the case, and to forfeit the right to direct the litigation as it saw fit, because there were other ownership interests who would have liked to choose the attorney or would have liked to choose the experts or choose the case strategy. And if we were to forego all of those claims, we may not even be standing here today, because there may have been someone else who decided how to do it, and then finally the owner would have necessarily been required to forfeit their traverse rights. We traversed this claim, and one of those issues is here today before you, and that process took a year and a half to two years to complete. You know, if a speedy trial were required, we would need to forfeit our traverse rights, and I just, I don't think that that's what's intended by the speedy trial request. Finally, as the appellate court referenced, this simple fault or mere complicity in delay versus willful and unjustified delay tactics cannot justify the deprivation of an owner's Fifth Amendment rights. Blue Island seems to allow dismissal only when there's a delay that can be laid 100 percent at the feet of the government, and such a punitive sanction must be reserved only for conduct that rises to this willful and intentional conduct, which is not presented here. As a constitutional matter, a trial court should not be empowered to deprive an owner of just compensation, which could amount to $10 million or more for simple complicity in delay, when such conduct would not warrant any sort of sanction under the Code of Civil Procedure. Finally, I'd like to address the invited error issue raised by the State. Counsel for the State indicates that we directed the court, that defendants directed the court to use the 1999 data value, but that's only half of the story. The record is clear that several months before the trial, we raised the constitutional question, proposed an alternative system to avoid the constitutional problem. Only upon denial of that request, both before and after the trial, did the owners acquiesce to the 1999 valuation that's required by the statute that we're now challenging. So this isn't a situation similar to the Swope case, which the State has cited to, where the counsel for the defendant in that case requested a particular procedure that ultimately deprived the client of due process, and then went on to challenge that. We sought an alternative remedy, were denied, and then simply acquiesced to the existing remedy that was required by the court. So we have not invited this error. The analogous situation would be if the court had actually granted our Kirby motion and allowed for an alternative procedure to set just compensation, and then only then being disappointed in the result, seeking to appeal that procedure. That would be the invited error, and that has not happened here. Mr. Wagner, the way it played out in the trial, if I understand your argument, then, is the jury instruction that ultimately went to the juror, instructing them on the date to value compensation was really, you're saying, if I just want to make sure I understand your argument, was decided based on this motion you filed four months before trial. Absolutely. We had filed the motion that there was argument made prior to trial and a ruling denying the Kirby motion, which then set the motion ball rolling toward the required 1999 date of valuation. It would have been futile to propose another jury instruction selecting a different date for the reasons of ripeness that we've discussed earlier, but also because our prior request had been denied. If there aren't further questions on the Kirby issue, I'd like to move on to the Travers claim, if I may. Well, before I do that, I'd like to talk about the date of valuation. On remand, in the event this Court does uphold the trial, or excuse me, the appellate court, as we suggest, the appellate court had directed that the new trial, if there is one, be based upon a current valuation, and they cited a prejudice to the plaintiff if any other valuation date were selected. We take issue with that. In Illinois, property is taken upon payment, and the Forest Preserve paid for this property in 2007. They've chosen not to take possession of the property, but just because they've chosen that does not mean that they do not have the right to possession. The right to possession has been conveyed by the payment, and the payment secures in the government the right to possession, and the right not to exercise that right does not undermine the fact that it holds the right to possession. And the Forest Preserve's argument under the Eminent Domain Act provides, or they cite the Eminent Domain Act claiming that it provides that possession, or excuse me, that the taking only occurs upon possession, but the portion of the Eminent Domain Act they cite to is the quick take article. And the quick take article does not apply to this case. This is not a quick take proceeding. In quick takes, the government gets vested with title upon payment of a preliminary amount of just compensation, but because there's been no actual payment of just compensation as determined by a jury, there has to be an alternative system set in place, which is possession, to determine when the taking has occurred. That is not the case here. All of the cases we've cited in our briefs indicate that taking takes place upon payment, and the government here has paid. Now getting to the issue of prejudice. Section 20-5-40 of the Act speaks of abandonment, and the corollary of the way that section is phrased seems to say that the district has a right to abandon the process any time before taking possession. Is that wrong? And that is the quick take article. That's discussing the government's rights under the context of a quick take proceeding. Would that not be analogous here? Well, no, it is absolutely not analogous, because an alternative rule had to be devised for quick take proceedings, because no payment of just compensation is made before possession. There's just a preliminary assessment of what just compensation may be, typically based upon the government's valuation. And therefore, because no payment of just compensation is made, then there has to be an alternative scenario to that, a separate procedure than what we're in here today. Here, we're in what would be a straight taking, where the government does not get vested with title until they pay the just compensation awarded by the jury. And they did that in this case, and they have chosen not to take possession, but they could at any time. There's nothing that stops them to. They've been vested with the right of possession, and we could not stop them if they wanted to come on the court, but they've got these rights. But the quick take order gives them that right. Exactly, and there was no quick take order in this case. This is not a quick take case. Moving on to the issue of prejudice, the plaintiff is not unduly prejudiced here, and really it's the owner who would be prejudiced by a current date of value. Had the trial court proceeded in the proper fashion, the date of value would have been set in 2007, maybe 2008. And if you look at the remand instructions, the date of value will be 2011 or 2012. We all know with the economic downturn that values of property have declined. And that procedure then shifts the burden of that economic decline wholly on the defendants and erases any of that burden from the government. Mr. Wagner, your time has expired. Thank you, Your Honors. There was a statement made by counsel that the cases cited by the plaintiff regarding how this court has defined the date of taking all relate to tax liens. I think that's an error. It's an error that was duplicated by the appellate court. The farewell decision, the Dunleavy decision, and the Blue Island decision incorporate those terms. They do not relate to tax liens. They are defining the date of taking for the plaintiff. The Supreme Court, in their Illinois eminent domain, in the farewell Supreme Court called that an issue that is no longer subject to debate or discussion. The date of taking in Illinois is the date of filing. Two, there was a suggestion that the West Suburban Bank case, which was also a Supreme Court decision that I argued on behalf of the Forest Preserve District, there was a suggestion by counsel that this court held that the date of payment is the date of taking. That is incorrect. That does not appear anywhere in that Supreme Court opinion. In fact, what the Supreme Court discussed in that opinion is that we have repeatedly said that the date of taking is the date that the case is filed. In somewhat contradictory fashion, we have also said that the case really isn't final until the payment occurs at the end of the case. Recognizing this, the date of taking definition is a judicially defined theory. It is a public policy statement. It is a decision that each and every state in this country has made and made differently. So the proposition that the Constitution of the United States requires payment on the date of taking is meaningless, because every jurisdiction in this country has defined the date of taking differently. And the suggestion that Illinois has recognized that the date of taking must equate to the date of valuation is to suggest that the statute of this body and the legislation of this state that mandates that property is valued on the date that the case is filed are in direct and deliberate derogation of that law. And there were four Supreme Court decisions that we cited that specifically indicate that the states are within their power in defining their just compensation framework. Those decisions include the Hooker decision, which was a Los Angeles statute that was virtually identical to the state of Illinois. The second decision was the McGovern decision, where the Supreme Court said the states under the 14th Amendment can define their just compensation framework. And unless it denies all just compensation, it does not offend the 14th Amendment. The next decision in that particular trilogy was the Brown decision, where the Supreme Court of the United States made a comparison between Idaho, which had a statute virtually identical to the state of Illinois, and they said that's fine. And the argument was you have to do it the same way that Minnesota did it, which uses the date of payment as the date of valuation. And the Supreme Court said they use a different definition for the date of taking. But the ultimate example of why the United States Supreme Court has always tolerated the bodies defining their own time of taking is actually the decision that was repeatedly cited in this particular case, that is the Danforth decision. Because if you read the Danforth decision of the United States Supreme Court, what they said is everybody defines the date of taking differently. And for purposes of federal cases, we declare that it's our view that the date of taking will be the date of payment, unless it's not. That's what the Supreme Court said in Danforth. If you don't have a statute that defines the date of taking differently, it's our view that the date of taking is the end. It's at the point of payment. Every judicial body in this country has defined the time of taking as the date of payment. And every judicial body has defined the time of taking differently. They all agree that they're going to try to evaluate just compensation at the time of taking. And once you make that theoretical judicial decision, all of the rest of the decisions regarding fairness and how you deal with risk and delay and speedy trials and forfeiture of rights, all of those decisions flow from the court defining the date of taking. There are no decisions until this decision in the state of Illinois that hold that the time of taking is the time of payment. Every decision that defines the time of taking in this state that we followed through the course of this 11-year history of this case specifies that the time of taking for Illinois law is the date that the complaint is filed. Thank you. May it please the court, I have three observations or arguments I'd like to make in response to the Appley's presentation here. First, with respect to the rightness issue, the argument that they could not have perfected a Kirby-type valuation for the claim before the trial was conducted, I note that we addressed that and that was the issue that Justice Thomas raised at pages seven and eight of our reply brief and it essentially reiterates the proposition that the discrepancy has to be material. A couple of days delay is not one that rises to that level. Opposing counsel indicated that they could not have known, however, whether there might have been several years, they said months or years of delay before the district tendered payment and therefore it was impossible for them to know what the taking date would be and I think that's inconsistent with the statute. The court has the power to set a short payment tender date, that's all within the Kirby materiality limitation in virtually all cases. They have the ability to demand that the court set a short date for tender or abandonment, they didn't need to do that. If there were a situation like the one they described where they'd asked for an immediate deadline for tender or abandonment and the circuit court said no, if the statute gave the circuit court that authority, then we'd have a situation like the Vermont case that they cite, the Chittenden case, but that's not this case where the tender was made eight days after the trial and it's not as if there was something that was beyond their power that they tried everything they could to make sure that the payment was made promptly after the trial. The Vermont case is fundamentally distinguishable, it's not this case and it doesn't excuse them for failing to do something before the trial to try to preserve whatever rights they would have had, leaving aside this BD trial thing. Second, they suggested that they properly acted to preserve their rights before the trial, that this is not an inviolated error situation. I address this specifically in page six of their brief, their assertion is false. They specifically told the court before he ruled on their pretrial motion for a Kirby hearing that it must instruct the jury to value the property in accordance with section 7-121. They said that before the judge denied their motion and ruled on it, they said it at oral argument. All of this was before the decision was made on their motion for a Kirby hearing, so the argument was that they agreed to this manner of proceeding, and that the fact that it happened only after their motion was denied is factually false. And they can't fault the circuit court for denying that motion in any event, because they didn't present any evidence that the value of the property had increased. What was the circuit court supposed to do? This was a jury trial case. Can you imagine in a criminal case where somebody says, judge, we're going to have a trial, I'm not going to testify, but if the judge finds me guilty, I want you to hear further evidence after that trial, maybe I'll testify, I want you to revisit the issue of guilt or not guilt. That's what they were asking the court to do in this case. They may have been confused about the remedy in Kirby, but it wasn't a reasonable confusion. The jury trial right is not something where you have a dress rehearsal or, you know, a temporary stop on the way to determine just compensation. It's where just compensation is determined. They told the judge to instruct the jury in a specific manner. Now they're saying that that's the grounds for reversible error based upon a trial, but they didn't do that. Finally, they say that the codification of the eminent domain act impliedly repealed the Blue Island rule. Now Blue Island recapitulates some of the earlier principles that have been established in just compensation law. Wrongful delay by the government, then abandonment, that type of thing. But it also articulated the rule that we are advocating applies here, which is the election by the landowner early on in the case to either choose a speedy trial and claim that they have a right to do so. They have a right to increased value or not. And there is no prior argument in this case, so I think it's forfeited that the eminent domain act impliedly repealed that principle. The rule generally, so it's forfeited, but in any event, the rule is that statutes are not presumed to repeal the common law. The opposite. So that argument has no merit. And finally, it's the Blue Island aspect that they're challenging is not a statutory one. It's a principle of constitutional adjudication in the state that the statute wouldn't be deemed to overrule because it addresses the waiver of the constitutional right to just compensation in the situation that you have here. Again, we're looking at a situation where the court is being asked to overrule one of its prior decisions that represents fundamentally sound policy that protects the public's right not to pay excessive compensation while providing every ability of the landowner to protect their constitutional rights at the same time. Thank you, Your Honor. Thank you. Case numbers 110759 and 110760, the Forest Preserve District versus First National Bank. It's taken under advisement as agenda number 16.